**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **ROGER BUTTERWORTH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 7:13-cv-558** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | **By: Hon. Robert S. Ballou** |
| **Acting Commissioner of Social Security,** | ) | **United States Magistrate Judge** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Roger Butterworth ("Butterworth") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1614(a)(3)(A). Butterworth alleges that the Administrative Law Judge ("ALJ") erred by failing to find at least a closed period of disability from August 14, 2009 to November 5, 2010. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I hereby **DENY** Butterworth's Motion for Summary Judgment (Dkt. No. 14), and **GRANT** the Commissioner's Motion for Summary Judgment. Dkt. No. 16.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Butterworth failed to demonstrate that he was

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636 (c)(1).

disabled under the Act.[2] <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Butterworth protectively filed for DIB on August 17, 2010, claiming that his disability began on July 23, 2009. R. 61-62, 167-68. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 63-70, 72-80. On June 25, 2012, ALJ Benjamin R. McMillion held a hearing to consider Butterworth's disability claim. R. 31-58. Butterworth was represented at the hearing, which included testimony from Butterworth and vocational expert James Williams. R. 31-58.

On July 11, 2012, the ALJ entered his decision analyzing Butterworth's claim under the familiar five-step process[3] and denying Butterworth's claim for benefits. R. 14-30. The ALJ

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. <u>See</u> 42 U.S.C. §§ 423(d)(2).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); <u>Taylor v. Weinberger</u>, 512 F.2d 664, 666 (4th Cir. 1975).

found that Butterworth suffered from the severe impairments of chronic pain in the neck, back, arms, and feet; lumbar post laminectomy syndrome; carpal tunnel syndrome, status post bilateral releases; diabetes; neuropathy; hypertension; cirrhosis of the liver; hepatitis C; emphysema; and history of alcoholism, in remission. R. 19. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 19-20. The ALJ concluded that Butterworth retained the RFC to perform light work,[4] with the following limitations: 1) never climb ladders, ropes, or scaffolds; 2) occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; (3) occasionally reach overhead, handle, or finger; and (4) receive no more than simple job instructions. R. 20. The ALJ determined that Butterworth could not return to his past relevant work as a dry wall applicator and packaging (R. 25), but that Butterworth could work at jobs that exist in significant numbers in the national economy, such as a counter clerk, furniture rental consultant, and rental clerk. R. 25-26. Thus, the ALJ held that Butterworth was not disabled. R. 26.

Butterworth appealed the ALJ's decision, and submitted a legal brief to the Appeals Council. R. 4. On September 25, 2013, the Appeals Council denied Butterworth's request for review (R. 1–6), and this appeal followed on November 25, 2013. Dkt. No. 2. On June 22, 2014, the Commissioner subsequently awarded benefits to Butterworth backdated to July 12, 2012, the day after the ALJ's decision in this action. Dkt. No. 15-1.

## ANALYSIS

Butterworth alleges that the ALJ should have found at least a closed period of disability from August 14, 2009 to November 5, 2010. He argues that the ALJ erred in underestimating the

---

[4]An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite his limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by him and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

Case 7:13-cv-00558-RSB   Document 24   Filed 03/25/15   Page 3 of 11   Pageid#: 751

debilitating nature of his liver cirrhosis as demonstrated by his placement on a liver transplant list for fifteen months from August 2009 through November 2010. Dkt. No. 15, at 5. Butterworth suggests that this fact was borne out by his award of benefits by the Commissioner effective as of July 12, 2012, the day after the ALJ's decision in this case. Id. Butterworth's contention that he should have been awarded a closed period of disability presents the questions of (1) whether his liver cirrhosis met or equaled one of the 5.00 listings for digestive health from August 2009 through November 2010, and (2) whether substantial evidence supports the ALJ's assessment of Butterworth's liver cirrhosis and his resultant physical limitations at the time of the ALJ's decision. Having reviewed the record as a whole, and for the reasons stated below, I find that Butterworth's condition did not meet or equal any of the Listings under 5.00 and that the ALJ's decision is supported by substantial evidence and should be affirmed.

*Listings Under 5.00*

Butterworth claims that he "would be close to meeting or otherwise equaling" one of the listings under 5.00 for digestive health. Dkt. No. 15, at 5. He points to his placement on the liver transplant list and his diagnosis of end stage liver failure as evidence. Dkt. No. 15, at 5. The two listings potentially applicable to Butterworth are Listing 5.05 for chronic liver disease and Listing 5.09 for a liver transplantation. Butterworth concedes that he did not ultimately receive a liver transplant, so he cannot meet Listing 5.09.[5] Dkt. No. 15, at 4. Butterworth also conceded during the hearing on November 24, 2014 that the policy behind Listing 5.09 was to provide benefits for claimants recuperating from a liver transplant, rather than to provide benefits to a claimant placed on a liver transplant list. Dkt. No. 23. Butterworth was unable to provide any evidence to suggest that his liver cirrhosis medically equaled the disability resulting from the

---

[5] "Consider under a disability for 1 year following the date of transplantation; thereafter, evaluate the residual impairment(s)". 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

recovery period from a liver transplant. Dkt. No. 23. Accordingly, only Butterworth's eligibility for Listing 5.05 is in controversy.

Butterworth suggests that his impairments may meet or equal the requirements of Listing 5.05. Dkt. No. 15, at 5. Listing 5.05 requires a diagnosis of liver cirrhosis with at least one ailment outlined in the listing's seven subsections.[6] Butterworth's brief does not reference which of the seven subsections of Listing 5.05 he may meet. Dkt. No. 15, at 5. During the hearing, Butterworth argued that he most likely equaled Listing 5.05(g), which covers end stage liver disease, and said that there was no other listing that he would be close to equaling. Dkt. No. 23. As evidence of equaling Listing 5.05(g), Butterworth states in his brief that he was in "a dire state of poor health" from his end stage liver failure. Dkt. No. 15, at 5. During the November 24 hearing, Butterworth estimated his SSA CLD score to be 11 or 12 during the closed period at issue, which he conceded is lower than Listing 5.05(g)'s minimum score of 22. Dkt. No. 23.

_____

[6] Listing 5.05 requires chronic liver disease, with "A. Hemorrhaging from esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy, demonstrated by endoscopy, x-ray, or other appropriate medically acceptable imaging, resulting in hemodynamic instability as defined in 5.00D5, and requiring hospitalization for transfusion of at least 2 units of blood. Consider under disability for 1 year following the last documented transfusion; thereafter, evaluate the residual impairment(s). OR B. Ascites or hydrothorax not attributable to other causes, despite continuing treatment as prescribed, present on at least 2 evaluations at least 60 days apart within a consecutive 6-month period. Each evaluation must be documented by: 1. Paracentesis or thoracentesis; or 2. Appropriate medically acceptable imaging or physical examination and one of the following: a. Serum albumin of 3.0 g/dL or less; or b. International Normalized Ratio (INR) of at least 1.5. OR C. Spontaneous bacterial peritonitis with peritoneal fluid containing an absolute neutrophil count of at least 250 cells/mm3. OR D. Hepatorenal syndrome as described in 5.00D8, with on of the following: 1. Serum creatinine elevation of at least 2 mg/dL; or 2. Oliguria with 24-hour urine output less than 500 mL; or 3. Sodium retention with urine sodium less than 10 mEq per liter. OR E. Hepatopulmonary syndrome as described in 5.00D9, with: 1. Arterial oxygenation (PaO2) on room air of: a. 60 mm Hg or less, at test sites less than 3000 feet above sea level, or b. 55 mm Hg or less, at test sites from 3000 to 6000 feet, or c. 50 mm Hg or less, at test sites above 6000 feet; or 2. Documentation of intrapulmonary arteriovenous shunting by contrast-enhanced echocardiography or macroaggregated albumin lung perfusion scan. OR F. Hepatic encephalopathy as described in 5.00D10, with 1 and either 2 or 3: 1. Documentation of abnormal behavior, cognitive dysfunction, changes in mental status, or altered state of consciousness (for example, confusion, delirium, stupor, or coma), present on at least two evaluations at least 60 days apart within a consecutive 6-month period; and 2. History of transjugular intrahepatic portosystemic shunt (TIPS) or any surgical portosystemic shunt; or 3. One of the following occurring on at least two evaluations at least 60 days apart within the same consecutive 6-month period as in F1: a. Asterixis or other fluctuating physical neurological abnormalities; or b. Electroencephalogram (EEG) demonstrating triphasic slow wave activity; or c. Serum albumin of 3.0 g/dL or less; or d. International Normalized Ratio (INR) of 1.5 or greater. OR G. End stage liver disease with SSA CLD scores of 22 or greater calculated as described in 5.00D11. Consider under a disability from at least the date of the first score." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Butterworth has the burden of demonstrating that his impairments meet or equal the requirements of a listing. See Sessoms v. Colvin, No. 2:12-CV-62-FL, 2013 WL 6190967, at *6 (E.D.N.C. Nov. 26, 2013). Because Plaintiff has not demonstrated how he meets the requirements of Listing 5.05 other than offering conclusory statements that he was in a dire state of health, his claim on this issue should be dismissed. See Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting conclusory assertion that the ALJ failed to consider whether he met listings when the claimant provided no legal or factual analysis). Even if Butterworth had attempted to demonstrate how he met or equaled Listing 5.05, the administrative record does not support a finding that Butterworth met or equaled the listing during the closed period. Although Butterworth experienced abnormal liver function, he did not meet or come close to equaling the listing requirements for chronic liver disease. In October 2009, Butterworth's MELD[7] score of 7 was far lower than the level required for Listing 5.05. R. 292. Butterworth's MELD score had in fact improved since February 2009, when it had been recorded at a score of 9. R. 300. Butterworth similarly could not demonstrate evidence of meeting the other Listing 5.05 subsections; his records showed no evidence of encephalopathy, ascites, or other evidence accepted under the listing. R. 291-92. No evidence in the record suggests that Butterworth met or equaled any of the nine related ailments accompanying cirrhosis of the liver.

The ALJ reasonably reviewed the administrative record, as he stated that he relied upon an evaluation of the record and explained his findings alongside Butterworth's RFC.  R. 20. Moreover, a "brief explanation at step three is acceptable where the ALJ's discussion of the relevant medical evidence at other steps of the evaluation make clear that the ALJ considered the

---

[7] "The Social Security Administration uses the SSA Chronic Liver Disease (SSA CLD) calculation similar to the MELD calculation. An individual meets the criteria of the listing if he or she has two SSA CLD scores in excess of 22. The Commissioner's Chronic Liver Disease Calculator has been adapted from the MELD formula documented on the UNOS Website." Rodriguez v. Astrue, No. 1:10-CV-01255 GSA, 2012 WL 844540, at *9 (E.D. Cal. Mar. 12, 2012) (internal quotations and citations omitted).

records relevant to the step three analysis." Coble v. Colvin, No. 7:12CV197, 2013 WL 4597149, at *5 (W.D. Va. Aug. 29, 2013). Although the ALJ's explanation for denying benefits under Listing 5.05 could have been more robust, the ALJ's discussion surrounding Butterworth's RFC was very thorough and sufficiently negated any possibility of meeting one of the listings. R. 20-24. The administrative record supports the ALJ's decision not to find a closed period of disability under Listing 5.05.

*Substantial Evidence*

There is no question that Butterworth had severe impairments caused by his liver cirrhosis, as the ALJ concluded. (R. 19) The question in this case is whether there is substantial evidence to support the ALJ's conclusion that despite these impairments, Butterworth could perform a job that existed in significant numbers in the national economy.

Several years prior to seeking DIB benefits, Butterworth had been diagnosed with Hepatitis C (R. 268) and evaluated for treatment for liver disease. R. 291. He demonstrated some reluctance to change his lifestyle, but reported that he stopped drinking alcohol in February 2009. R. 268. Butterworth underwent a liver biopsy by Abdulah Al-Osaimi, M.D. on February 20, 2009. R. 304-05. Steven M. Powell, M.D. diagnosed Butterworth with an unknown stage of liver disease on February 26, 2009 (R. 306-07), which ultimately was determined to be stage four fibrosis.

It is unclear from the record when Butterworth was placed on the liver transplant list. Butterworth's brief claims a date of August 14, 2009. Dkt. No. 15, at 3, 5. However, records from Dr. Al-Osaimi show that Butterworth was only being evaluated for a liver transplant as of October 20, 2009 at UVA's Liver Transplant Clinic. R. 291-92. During the consult, Dr. Al-Osaimi noted that Butterworth felt well and had been working. R. 291. In a November 2009

check-up with Neeral Shah, M.D., Butterworth began medicating with Interferon and Ribavirin to treat his Hepatitis C. R. 297. During his appointment with Dr. Shah, Butterworth reported that he did not suffer from ascites, encephalopathy, or edema. R. 299. At the same appointment, Dr. Shah found that Butterworth's "weight is good, his appetite is stable, and his energy level is at baseline." R. 299. On March 8, 2010, primary care physician Catherine Rea, M.D. of Carilion Clinic noted that Butterworth completed one medication for Hepatitis C that lowered his level of disease but had not eradicated it. R. 376. Butterworth's placement on the transplant list was not recorded at the Carilion Clinic until March 18, 2010, where it was mentioned that he was "being evaluated at UVA for [a] liver transplant." R. 278. See also R. 395 (noting placement on transplant list and Butterworth's report of "not feeling well, lost 10 pounds"). As of November 5, 2010, Butterworth reported to primary care physician Dr. Rea that he was no longer on the transplant list. R. 417.

There are no opinions from any treating physicians indicating Butterworth was disabled from working during the closed period at issue, August 2009 through November 2010. R. 66, 76. Such opinions were generated after the closed period. See, e.g., R. 392-94. The only record suggesting disability during the relevant time period is a January 5, 2010 treatment record from James B. Carr, M.D. R. 337-39. Without providing reasoning, Dr. Carr noted that Butterworth "is unable to do former duties," and assessed that his disability would last for three months after the date of report due to Butterworth's surgery on November 25, 2009 for cubital tunnel and carpal tunnel release. R. 337. Dr. Carr's brief assessment did not mention a need for disability due to Butterworth's liver disease.

The only medical opinion regarding disability during the time period at issue is from a state agency consulting physician. Based on his review of Butterworth's medical records, state

agency consulting physician Robert McGuffin, M.D. gave the opinion that Butterworth was limited to occasionally lifting 20 pounds, frequently lifting 10 pounds, standing or walking for six hours in an eight-hour work day, sitting for six hours in an eight-hour work day, and allowing only limited pushing and pulling in his upper extremities. R. 66-68. This evaluation is generally consistent with physical exertion requirements of light work. See 20 C.F.R. § 404.1567.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). The ALJ's opinion, while not specifically discussing a closed period, clearly reflects that the ALJ considered whether Butterworth's impairments, alone or in combination, ever rendered him unable to perform substantial gainful activity for a period of twelve months or greater. The ALJ considered the various medical problems Butterworth faced during the relevant period. He recognized that a biopsy confirmed Butterworth's stage-four cirrhosis and that a liver transplant was considered at UVA beginning in October 2009. R. 21. The ALJ reviewed not only Butterworth's liver disease, but recognized his neuropathy, his surgeries on his hands and elbows, his carpal tunnel, his back surgeries, his diabetes mellitus, and even his emphysema. R. 20-22. The ALJ also looked at additional medical information from the period at issue supporting Butterworth's claim, including records from George Baylor, M.D. from September 1, 2010 through June 30, 2011; Catherine Rea, M.D. from March 18, 2010 through June 15, 2011; and Clement Elechi, M.D. from March 8, 2010 through August 11, 2010. R. 30, 126. The ALJ's thorough review of Butterworth's treatment and changes in condition suggest that he carefully perused the medical records before him. Despite the recognition of these ailments, the ALJ still found that Butterworth was not disabled based on Butterworth's self-reports of his abilities to

prepare simple meals, perform personal care, shop for groceries, and engage in other daily activities. R. 23. Vocational expert James Williams supported the ALJ's conclusion that Butterworth could work during that period, finding that multiple jobs existed in the national economy that Butterworth could perform. R. 25-26. Nothing suggests in the record that the ALJ improperly assessed the medical evidence or accepted the vocational expert's conclusions.

Butterworth's contention that his placement on the transplant list should be sufficient to find him disabled is not persuasive. Dkt. No. 15, at 5. As discussed in detail above, the ALJ relied upon substantial evidence to in his decision. Further, evaluations for a liver transplant and placement on a liver transplant list are insufficient to prove a disability. Under the substantial evidence standard, the Western District of Virginia has affirmed a denial of DIB benefits for a claimant who was evaluated for a liver transplant and later died of hepatitis C as an underlying cause. Lawrence v. Barnhart, No. 7:05CV00625, 2006 WL 2716153, at *3-5 (W.D. Va. Sept. 20, 2006). The administrative record must show more than a diagnosis; it must show an inability to work. Butterworth has proven a diagnosis of liver cirrhosis, but he has not proven his inability to engage in work in the national economy.

Ultimately, the ALJ found that Butterworth was not disabled at any time from his alleged onset date through the date of his decision. "Implicit in this finding is the fact that Plaintiff was not entitled to a closed period of disability at any relevant time." Atwood v. Astrue, 5:11CV002-RLV-DSC, 2011 WL 7938408, at *6 (W.D.N.C. Sept. 28, 2011) report and recommendation adopted, 5:11-CV-00002-RLV, 2012 WL 1858764 (W.D.N.C. May 22, 2012). Additionally, the ALJ's decision should not be displaced by Butterworth's subsequent decision awarding benefits. Butterworth has not alleged that the subsequent decision or the evidence underlying it constitutes new and material evidence not previously offered for good cause. Wilkins v. Secretary of Dep't

of Health & Human Servs., 953 F.2d 93, 96 n. 3 (4th Cir.1991) ("A claimant seeking a remand on the basis of new evidence . . . must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier.").  Because the ALJ's decision is supported by substantial evidence, there is no basis for remand to consider a closed period.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be denied, Defendant's Motion for Summary Judgment will be granted, and this action will be dismissed and stricken from the active docket of the Court.

Enter: March 25, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge